UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| KAREN ASHLEY, | Case No. 5:23-cv-00013 |
| PLAINTIFF, | |
| V. | |
| CLAY COUNTY and CONCORD MEDICAL GROUP PLLC | |
| DEFENDANTS | **(JURY DEMANDED)** |

## PLAINTIFF'S ORIGINAL COMPLAINT & JURY DEMAND

Plaintiff Karen Ashley ("Ms. Ashley") files this Original Complaint & Jury Demand against Defendant Clay County and Concord Medical Group PLLC (collectively "Defendants"), and would respectfully show the following:

### Parties

1.      Ms. Ashley is a resident and citizen of the State of Texas.

2.      Defendant, Clay County is a County within the state of Texas, located within the Northern District of Texas.  Under Tex. Civ. Prac. & Rem. Code § 17.024, service of process may be effectuated against Clay County by service to the **County Judge, Mike Campbell Courthouse Annex, 214 N. Main St. Henrietta, Texas, 76365**.

3.      Defendant Concord Medical Group PLLC ("Concord") is a Texas entity, doing business in Lubbock, Texas.  Concord may be served by service of process to its

1

Registered Agent: **Registered Agent Solutions, Inc., Corporate Center One 5301**

**Southwest Parkway, Suite Austin, TX 78735**.

## Venue & Jurisdiction

4.      This case arises under the Court's federal question jurisdiction based on Ms.

Ashley's claims under 42 U.S.C §1983 and §1988. The Court has jurisdiction over

Ms. Ashley's state law claims based on 28 USC §1367(a).

5.      Venue in this District is proper as it satisfies the requirements of 28 U.S.C. §

1391, in that Defendant Concord is a resident of Lubbock County, which is within

this District, Defendant Clay County is a resident of Clay County, which is also

within this District, and all Defendants are subject to personal jurisdiction in the

District of this Court.

## Factual Background

6.      This is a retaliation lawsuit based on Clay County's discrimination against

Ms. Ashley and Clay County's retaliatory action against her, including the discharge

of her in violation of Texas law. Specifically, Clay County violated Texas

Occupations Code § 301.413. Clay County took this retaliatory action against Ms.

Ashley because she (1) she made protected reports under Texas Occupations Code

§ 301.413 and (2) she engaged in conduct protected by the First Amendment.

7.      In 2021, Clay County hired Ms. Ashley to be the Chief Nursing Officer

("CNO") at Clay County Memorial Hospital (the "Hospital" or "CCMH").

Throughout the course of her employment, Ms. Ashley discovered numerous patient

safety issues at the Hospital. Consistent with her obligations under Texas law, Ms. Ashely repeatedly reported these issues, including the hospital's violations of Texas law, to the Hospital's former CEO, Lisa Swenson, and the CCMH Hospital Board of Managers (the "the CCMH Hospital Board" or the "Board").

8.      For background, Concord Medical Group PLLC provides physicians to Clay County Memorial Hospital. In other words, Concord staffs the Hospital. During the course of her employment, Ms. Ashley discovered that some of the physicians that Concord provided to the Hospital were not emergency-trained physicians. Despite this lack of qualifications, Clay County and Concord assigned physicians who were not emergency-trained to the Emergency Room. For example, Dr. T. David Greer is (or was not at that time) emergency room certified.  But despite this lack of qualification, Dr. Greer worked partially in the Hospital's Emergency Room. Ms. Ashley reported this significant patient safety concern and violation to Swenson, who was employed as the Hospital's CEO during that time. Ms. Ashley also reported this to the CCMH Hospital Board.  Importantly, Dr. Greer not only worked as an agent and physician on behalf of Concord, Dr. Greer also was a member of the CCMH Hospital Board.

9.      Ms. Ashley also reported that there was mold in the Hospital's patients' rooms. Specifically, in or around March/April 2022, Ms. Ashley reported that there was black mold located in patient's rooms, thereby endangering the patients. Ms. Ashley reported this dangerous condition to CEO Swenson. Put differently, Ms.

Ashley reported that the Hospital violated the Occupational Safety and Health Act of 1970, Section (5)(a)(1).

10.    In addition, Ms. Ashley learned that Clay County Memorial Hospital's employees were placing liquid Acetaminophen and Codeine in regular pill bottles, which are designed to carry solid pills. On or around June 22, 2022, Ms. Ashley reported this serious patient safety issue to Swenson and to the hospital's pharmacy.

11.    Furthermore, in or around July or August 2022, Ms. Ashley discovered that the Hospital's pharmacy did not provide an after-hours pharmacy number for the Hospital's nurses. To be clear, a hospital's failure to provide an after-hours pharmacy number is a violation of law. Indeed, a hospital must have an after-hours pharmacy number so that the hospital's nurses may contact a pharmacist in the event of an emergency. Ms. Ashley discussed the Hospital's failure to provide an after-hours pharmacy number with a nurse advocate, who confirmed that the Hospital's failure was illegal. In all, despite this legal requirement, the Hospital failed to publish an after-hours pharmacy number to its nurse employees. Ms. Ashley subsequently reported the Hospital's failure to maintain and post an after-hours pharmacy number. Indeed, Ms. Ashley again reported the problem to CEO Swenson.

12.    On or around August 1, 2022, Ms. Ashley learned that the Hospital's pharmacy technician(s) changed the expiration date on medications that were stored in the pharmacy. Concerned by her observation, Ms. Ashley immediately reported the problem to Dr. Greer. Dr. Greer responded by stating he was not sure whether

pharmacy technicians were allowed to cross out the dates on medications, or not. Ms. Ashley also reported the issue to Swenson and to one of the pharmacy technicians. Unfortunately, the Hospital failed to take any action.

13.     During this time period, members of the CCMH Hospital Board, including Sheriff Jeff Lyde and CEO Lisa Swenson began to advocate for a change in hospitals staffing and ownership. Specifically, on June 27, 2022, the CCMH Hospital Board terminated its contract with Concord Medical Group.  Several weeks later on August 12, 2022, the Board approved a contract with ACPHealth – a contract medical services provider – by a vote of 3-1 (with Dr. Greer abstaining due to the conflict of interest).  Several days later, Dr. Greer resigned from the Board.

14.     Ms. Ashley associated with and advocated on behalf of removing Concord Medical Group and replacing Concord Medical Group with either ACPHealth or another qualified entity. Ms. Ashley associated with Ms. Swenson and others who also advocated for this political change in Clay County.

15.     Less than three weeks later, on August 29, 2022, the Clay County Commissioners' Court voted to enlarge the Board of Managers at CCMH from five to twelve.  The Commissioners' Court then re-appointed Dr. Greer, along with others new Board members.  The CCMH Hospital Board and Clay County then terminated the contract with ACPHealth.

16.     On September 21, 2022, Ms. Ashley voiced her concerns regarding violations of law and patient safety at the CCMH Hospital Board meeting. Prior to the meeting, Ms. Ashley, as all members of the public had the right to do, submitted

paperwork to be on the agenda to speak at the meeting. Ms. Ashley spoke and addressed these issues, not as the Chief Nursing Officer, but rather, as a citizen who engaged in the official process before the CCMH Hospital Board. Indeed, the speech was not required by her employment with Clay County Memorial and any citizen of Clay County had the right and opportunity to similarly speak at the meeting via the official request process. Notably, the meeting was streamed and posted on Facebook, and members of the community were present at the Board meeting. As a result, Ms. Ashley acted as a private citizen speaking as a citizen on matters of public concern.

17.    In that meeting, Ms. Ashley detailed the missing fentanyl issue, wherein she learned that 25 vials of fentanyl were missing from the Hospital, including the serious risk to the public. Ms. Ashley also reported that the Hospital's doctor(s), including Dr. Greer, failed to follow the proper procedures regarding blood transfusions. Ms. Ashley learned that on or around September 20, 2022, a patient's temperature started unexpectedly rising. Although Ms. Ashley was not present during the situation, as an experienced nurse, Ms. Ashley understood that the hospital's policy required that the patient's transfusion be paused and that the patient's doctor be notified. However, Dr. Greer failed to follow this established policy and procedure. After Ms. Ashley learned about Dr. Greer's failure to follow the correct procedure regarding blood transfusions, thereby endangering patient safety, Ms. Ashley reported the issue to Ms. Swenson and to Clay County Memorial

Hospital's Board of Managers. Unfortunately, Clay County failed to take any action to remedy the problem.

18.    On October 20, 2022, Clay County Memorial Hospital terminated Ms. Ashley. Ms. Ashley was not provided a reason for her termination. To be clear, Ms. Ashley was terminated because she reported the aforementioned patient safety issues and the Hospital's violations of law. In other words, the Hospital terminated and retaliated against Ms. Ashley because of her protected activity.

19.    Even after the termination, Clay County Memorial Hospital and its agents, including its lawyer, Frank Douthitt, continued to retaliate and belittle Ms. Ashley's reports. By example, Mr. Douthitt referred to Ms. Ashley, as one of the employees of the hospital who was "trashing" the hospital. Likewise, Douthitt grouped Ashley as part of an association between Sherriff Jeff Lyde, CEO Lisa Swenson, Tiffany Hoff (an x-ray technician at CCMH), and Robert Montgomery (an EMT at CCMH). In other words, Mr. Douthitt attempted to label Ms. Ashley's protected acts – indeed, conduct protected by Texas law – as "trashing" the hospital.

20.    The following day, two CCMH Hospital Board members, Jennifer Scott and Quentin Moore, resigned. In her resignation, Ms. Scott stated that the County's decision to overrule and then pack the CCMH Hospital Board was based on "[p]ettiness, jealousy, and malicious acts." Ms. Scott stated:

To whom it concerns,

It is with a heavy heart that I write this letter. It has been an honor to serve on this CCMH Board of Managers since 2017. When then, commissioner Keen, asked me to sit on this board, I eagerly accepted the position and responsibility that came with it. Until recently, it has truly been an honor to serve the citizens of Clay County, and the employees of CCMH. The events of the last couple of months have changed that feeling, so much so, that instead of an honor, it has become a feeling of dread and disgust. I feel we have worked very hard to revitalize a dying hospital with the countless changes, multiple renovations, and purchase of new equipment, including a new medicine dispenser/cabinet to help aide in better inventory management, and less medication errors.

We had new doctors coming in that could have built up our dying ER and bring back services that have long since been ignored; i.e. colonoscopies, oral surgery, better care of myocardial infarctions (heart attacks), just to name a few. We were finally going to be able to put our surgery suite back in use, other than the couple of times a month it is now used for cataracts surgery. It broke my heart that we were asked to resign. I could see that our hospital was finally going to grow and prosper again; a hospital that the citizens of Clay County could once again trust to provide them with the best care possible.

However, that is now not the case. Pettiness, jealousy, and malicious acts of others, seems to have prevailed. I would have dearly loved to see our hospital flourish, but I no longer see that transpiring. I was asked to sit in this seat by a man that trusted I would fulfill the responsibilities that came with it. I can say with full confidence that I have done so. With that being said and the recent changes, I cannot and will not have my name be a part of the demise of this hospital. We were once a trusted group of individuals, entrusted to make tough decisions that were in the best interest of the hospital. Yet, now we are disrespected and mocked by "some" of the new added board members, and commissioners of Clay County. Our once trusted voices, and the majority of CCMH employee's voices are only not being heard, but completely disregarded. It is with this, that I tender my resignation from the CCMH Board of Managers. The amount of stress this has imposed is no longer worth the risk to my health, nor my family.

Sincerely,

Jennifer Scott, Member

8

21.    As a result of Defendant's wrongful conduct, Ms. Ashley has suffered significant damages, including lost wages, mental anguish, reputational harm, and other damages available law. Furthermore, Defendants knew that it was unlawful/illegal to terminate an employee in violation of Texas Occupations Code § 301.413 and 42 U.S.C §1983 and §1988. Despite that knowledge, Defendant chose to unlawfully retaliate against Ms. Ashley.

## Conditions Precedent

22.    All conditions precedent for Ms. Ashley obtaining the relief sought in this cause have been performed or have occurred. Clay County Memorial Hospital has not created a specific grievance protocol under Texas law. However, out of an abundance of caution, Ms. Ashley filed a grievance with the County on January 16, 2023.

## FIRST CAUSE OF ACTION AGAINST CLAY COUNTY ONLY — UNLAWFUL RETALIATION IN VIOLATION OF TEXAS OCCUPATIONS CODE § 301.413

23.    The Texas Occupations Code § 301.413 provides a cause of action against a person who suspends, terminates, disciplines, discriminates against, or retaliates against a nurse who reports in good faith that she had reasonable cause to believe exposed a patient to substantial risk of harm as a result of a failure to provide patient care that conformed to minimum standards of acceptable and prevailing professional practice or to statutory, regulatory, or accreditation standards, under Section 301.4025(b).

24.     Ms. Ashley reported in good faith that she had reasonable cause to believe that

Clay County had exposed patient(s) to substantial risk of harm as a result of a failure

to provide patient care that conformed to minimum standards of acceptable and

prevailing professional practice or to statutory, regulatory, or accreditation standards,

under Section 301.4025(b).

25.     Clay County responded to Ms. Ashley's numerous reports by retaliating against

her and fabricating various pre-textual grounds for wrongfully and maliciously firing

her as a result of their reports.

26.     In addition, Texas Occupations Code § 301.413 provides a rebuttable

presumption that the Ashley's employment was suspended or terminated, or that she

was disciplined or discriminated against, for making a report related to a violation

where the adverse action "occurs before the 60th day after the date on which the

plaintiff made a report in good faith."  Here, Ms. Ashley reported misconduct on

September 21, 2022.  Within weeks of that report, Clay County terminated her, thus

constituting an adverse action.  As a result, there is a rebuttable presumption that

Clay County retaliated against Ms. Ashley.

**SECOND CAUSE OF ACTION AGAINST CLAY COUNTY ONLY –
VIOLATION BY RETALIATION UNDER 42 U.S.C. § 1983 FOR EXERCISE
OF FIRST AMENDMENT FREE SPEECH RIGHTS**

27.     Ms. Ashley worked as the Chief Nursing officer at Clay County Memorial

Hospital.  On September 21, 2022, Ms. Ashley addressed the CCMH Hospital Board

in a public meeting.  Prior to the meeting, Ms. Ashley, as all members of the public

10

had the right to do, submitted paperwork to be on the agenda to speak at the meeting.

Ms. Ashley spoke and addressed these issues – not as the Chief Nursing Officer –

but rather, as a citizen who engaged in the official process before the CCMH

Hospital Board.  Indeed, the speech was not required by her employment with Clay

County Memorial and any citizen of Clay County had the right and opportunity to

similarly speak at the meeting via the official request process. Notably, the meeting

was streamed and posted on Facebook, and members of the community were present

at the board meeting. As a result, Ms. Ashley acted as a private citizen speaking as

a citizen on matters of public concern.

28.    At the meeting, Ms. Ashley addressed issues of a public concern.

Specifically, Ms. Ashley detailed the missing fentanyl issue, including the serious

risk to the public. Ms. Ashley also reported that the Hospital's doctors, including

Dr. Greer, failed to follow the proper procedures regarding blood transfusions.

Specifically, Ms. Ashley observed that a patient's temperature started unexpectedly

rising. As an experienced nurse, Ms. Ashley understood that the hospital's policy

required that the patient's transfusion be paused and that the patient's doctor be

notified. However, Ms. Ashley observed that Dr. Greer failed to follow this

procedure. After Ms. Ashley observed this failure to follow the hospital's policies

and procedure regarding blood transfusions, Ms. Ashley reported the issue to Ms.

Swenson and to Clay County Memorial Hospital's Board of Managers.

Unfortunately, Clay County Memorial Hospital failed to take any action to remedy

the problem.  The public has a vital interest in free and open discussion on issues of

public importance, including the violations of law and mismanagement at the hospital.

29.     Ms. Ashley had the right to free speech as set forth in the First and Fourteenth Amendments to the United States Constitution.  After she spoke out on such matters of public concern, Clay County engaged in actions, omissions, and decisions aimed at denying her rights and protections granted to them under law, including, but not limited to retaliating against and terminating her. Clay County's actions, omissions, and decisions were designed to cause, have caused, and will continue to cause her to lose wages, compensation, entitlements, and rights.

30.     Clay County's retaliatory action was sufficient to deter a person of ordinary firmness from exercising these constitutional rights protected by the First and Fourteenth Amendments.  Specifically, Clay County's actions, omissions, and decisions were taken to discourage other hospital employees or nurses from engaging in protected speech regarding matters of public concern.

31.     The CCMH Hospital Board is the final policy maker for CCMH.  As a final policy maker of CCMH, the CCMH Hospital Board ratified the unconstitutional retaliation against Ms. Ashley by approving her termination and engaging in the termination. Likewise, the CCMH Hospital Board engaged in, and committed, the unconstitutional retaliation against Ms. Ashley by retaliating and terminating her because of her acts protected by the First Amendment.  More specifically, the CCMH Hospital Board engaged in a conscious, affirmative choice to ratify the termination of Ashley and to terminate Ms. Ashley. As a result, the CCMH Hospital

Board had knowledge that it was violating the first amendment by terminating Ms.

Ashley because of her protected speech.  This conduct was the moving force behind

Ms. Ashley's termination and retaliation.

32.    Clay County committed these acts, omissions, and decisions in response to,

and in retaliation for, her exercise of their constitutional and lawful rights to speak

out about matters of public concern, in violation of the rights safeguarded under the

First and Fourteenth Amendments to the U.S. Constitution.

33.    In committing the acts complained of herein, Clay County acted under color

of state law to deprive her of certain constitutionally protected rights under the First

and Fourteenth Amendments to the Constitution of the United States. Clay County

retaliated against and terminated Ms. Ashley because of her protected speech

regarding matters of public concern. A direct causal link exists between her

constitutionally protected conduct and Clay County's retaliatory action based on the

close temporal proximity between the speech and termination. As a result, Clay

County's actions, omissions, and decisions have deprived her of her rights,

privileges, and immunities secured by the U.S. Constitution and laws in violation of

42 U.S.C. § 1983. Liability and redress for such actions, omissions, and decisions

exists under 42 U.S.C. § 1983.

34.    The grounds and reasons offered by Clay County for the adverse actions,

omissions, and decisions taken against Ms. Ashley are false and pretextual.

35.    As a direct and proximate result of the violation of her constitutional rights

by Clay County, Ms. Ashley suffered general and special damages as alleged in this

Complaint and are entitled to relief under 42 U.S.C §1983. In addition, Clay County's actions, omissions, and decisions were designed to cause, and have caused, the Ms. Ashley to suffer humiliation and harm to their reputation, emotional and mental injuries, pain and suffering, and financial and other adverse harm.

## THIRD CAUSE OF ACTION AGAINST CLAY COUNTY ONLY – VIOLATION OF 42 U.S.C. § 1983 FOR EXERCISE OF FIRST AMENDMENT ASSOCIATION RIGHTS

36.     Ms. Ashley worked as the Chief Nursing Officer at CCMH. During her employment, she engaged in the constitutional right to associate with other employees and leaders of CCMH, including CEO Lisa Swenson and CCMH Hospital Board Members.  This association was political in that it related to the public political issue regarding management of CCMH, including the contract with Concord and potential contract with other health care management companies.  Ms. Ashley advocated and associated with members who advocated to seek change in the management of CCMH, including the contract with Concord and potential contract with other health care management companies.

37.     Ms. Ashley had the right to assemble and associate as set forth in the First and Fourteenth Amendments to the United States Constitution. As a result of her public participation, Clay County through its final policymakers, engaged in actions, omissions, and decisions aimed at denying her rights and privileges granted under law, including but not limited to retaliating against and terminating her from employment at CCMH. Clay County's actions, omissions, and decisions in retaliating against and Ms. Ashley, were made in retaliation for her exercise of her

14

Constitutional and lawful right to freely associate, in violation of the rights safeguarded under the First and Fourteenth Amendments to the U.S. Constitution.

38.     Ms. Ashley had a right to association as set forth in the First and Fourteenth Amendments to the United States Constitution.  After she advocated and associated with others on such matters of public concern, Clay County engaged in actions, omissions, and decisions aimed at denying her rights and protections granted to them under law, including, but not limited to retaliating against and terminating her. Clay County's actions, omissions, and decisions were designed to cause, have caused, and will continue to cause her to lose wages, compensation, entitlements, and rights.

39.     Clay County's retaliatory action was sufficient to deter a person of ordinary firmness from exercising these constitutional rights protected by the First and Fourteenth Amendments.  Specifically, Clay County's actions, omissions, and decisions were taken to discourage other hospital employees or nurses from engaging in protected association regarding matters of public concern.

40.     Clay County committed these acts, omissions, and decisions in response to, and in retaliation for, her exercise of her constitutional and lawful rights to associate and advocate about matters of public concern, in violation of the rights safeguarded under the First and Fourteenth Amendments to the U.S. Constitution.

41.     In committing the acts complained of herein, Clay County acted under color of state law to deprive her of certain constitutionally protected rights under the First and Fourteenth Amendments to the Constitution of the United States. Clay County

retaliated against and terminated Ms. Ashley because of her protected association regarding matters of public concern. A direct causal link exists between her constitutionally protected conduct and Clay County's retaliatory action based on the close temporal proximity between the speech and termination. As a result, Clay County's actions, omissions, and decisions have deprived her of her rights, privileges, and immunities secured by the U.S. Constitution and laws in violation of 42 U.S.C. § 1983. Liability and redress for such actions, omissions, and decisions exists under 42 U.S.C. § 1983.

42.    The grounds and reasons offered by Clay County for the adverse actions, omissions, and decisions taken against Ms. Ashley are false and pretextual.

43.    As a direct and proximate result of the violation of her constitutional rights by Clay County, Ms. Ashley suffered general and special damages as alleged in this Complaint and are entitled to relief under 42 U.S.C §1983. In addition, Clay County's actions, omissions, and decisions were designed to cause, and have caused, the Ms. Ashley to suffer humiliation and harm to her reputation, emotional and mental injuries, pain and suffering, and financial and other adverse harm.

**FOURTH CAUSE OF ACTION AGAINST CONCORD ONLY— TORTIOUS INTERFERENCE WITH CONTRACT/EMPLOYMENT**

44.    Ms. Ashley had an employment relationship with CCMH.  Based on this relationship, there was a reasonable probability that Ms. Ashley would have continued this employment relationship in the future.

45.    Concord had knowledge of this employment relationship.  Concord willfully

and intentionally interfered with these relationships by engaging in the conduct

described herein to the substantial detriment of Ms. Ashley. Concord's intentional

and willful interference caused a business disruption to Ms. Ashley, including lost

wages and harm to her reputation.

**FIFTH CAUSE OF ACTION AGAINST CONCORD ONLY— TORTIOUS
INTERFERENCE WITH PROSPECTIVE RELATIONS AND ECONOMIC
ADVANTAGE**

46.    Ms. Ashley had longstanding and continuous relationships within Clay County

and at CCMH.  Due to these longstanding and continuous relationships, there was a

reasonable probability that Ms. Ashley would have continued to work for CCMH as

the chief nursing officer. In addition, there is a reasonable probability that Ms. Ashley

would have entered into various other business relationships with third persons or

entities, but for Defendants' improper acts and omissions, as set forth herein.

47.    Concord's conduct was independently tortious because Concord violated

Texas Occupations Code § 301.413 by participating the termination and retaliation of

Ms. Ashley, aided and abetted and conspired to violate Texas Occupations Code §

301.413, aided and abetted and conspired to violate 42 U.S.C. § 1983, and aided and

abetted and conspired to violate Texas Health & Safety Code § 161.134.

48.    Concord willfully and intentionally interfered with the relationships between

Plaintiff and these persons and entities. Furthermore, Concord committed these acts

with a conscious desire to prevent the relationship from occurring or knew that the

interference was certain or substantially certain to occur as a result of his conduct. This

interference impacted and proximately caused economic loss in the past and future to Ms. Ashley.

### RESULTING LEGAL DAMAGES

49.     Ms. Ashley is entitled to the actual damages resulting from the Defendant's violations of the law.  Defendant's retaliatory discharge, adverse action, and hostile work environment against Ms. Ashley entitles her to actual damages, punitive damages, lost past and future wages, mental anguish, reputational harm, exemplary damages, attorney's fees, and other penalties provided by law.

### Prayer

WHEREFORE, PREMISES CONSIDERED, Ms. Ashley respectfully requests that she have judgment against Defendants for legal damages in excess of the minimum jurisdictional limits of this Court, pre- and post-judgment interest as allowed by law, costs of suit, and all other relief, at law or in equity, to which she may be entitled.

Respectfully Submitted,

**DOYLE DENNIS LLP**

MICHAEL PATRICK DOYLE
State Bar No. 06095650
PATRICK M. DENNIS
State Bar No. 24045777
The Clocktower Building
3401 Allen Pkwy., Suite 100

19

Houston, Texas 77019
Phone: (713) 571-1146
Fax:  (713) 571-1148
service@doylelawfirm.com
**ATTORNEYS FOR PLAINTIFF**